UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

              Plaintiff,

       v.

STEVEN JONES, also known as Steve-O,
also known as Bless,

              Defendant.
_____

REPORT & RECOMMENDATION

15-CR-6058L

## **PRELIMINARY STATEMENT**

By Order of Hon. David G. Larimer, United States District Judge, dated April 23, 2015, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 18).

On April 23, 2015, the grand jury returned a ten-count indictment against defendant Steven Jones, a/k/a Steve-O, a/k/a Bless ("Jones") and co-defendant Kasandra Weeks. (Docket # 17).  The first count charges him with conspiring from August 2011 through March 2014 to commit sex trafficking, in violation of 18 U.S.C. § 1594(c).  (*Id.*).  Counts Two, Three, Four, Five and Seven charge Jones with six counts of sex trafficking of a minor, each involving a different minor, in violation of 18 U.S.C. §§ 1591(a) and 1591(b)(2).  (*Id.*).  Counts Nine and Ten charge him with two counts of substantive sex trafficking by coercion, each involving a different adult victim, in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1) and 2.  (*Id.*).

Currently pending before the Court is Jones's motion to suppress evidence of photographic identifications made by three witnesses.[1] (Docket # 39). For the reasons discussed below, I recommend that the motion be denied.

An evidentiary hearing was held on April 5, 2016, at which the government elicited testimony from Peter Uzarowski ("Uzarowski"), a Special Agent with the Department of Homeland Security, who has been assigned to the Federal Bureau of Investigation ("FBI") Child Exploitation Task Force (the "Task Force") for the past two years. (Docket # 49). Supplemental post-hearing memoranda were submitted by the defense on June 28, 2016 (Docket # 52) and the government on July 1, 2016 (Docket # 53).

## FACTUAL BACKGROUND

Uzarowski testified concerning three photographic identification procedures he conducted with different witnesses on February 26, 2014, September 24, 2014, and October 3, 2014. (Docket # 49). In each case, he and another officer met with the witness in person, interviewed the witness about her involvement with the defendant, and showed the witness a photographic array containing six photographs, one of which depicted the defendant. (*Id.*).[2]

### A. February 26, 2014 Identification Procedure

Uzarowski testified that he was involved in an investigation of Steven Jones on February 24, 2014. (Tr. 5). As part of that investigation, he and another Task Force officer, Chris Harrington, met with a witness that afternoon at a restaurant in Perinton, New York. (*Id.*).

---

[1] Through his prior counsel, Jones filed an omnibus motion seeking various forms of relief, namely, a bill of particulars, *Brady* material, a conspiracy hearing, dismissal of the indictment, Rule 404(b), 608, 609 evidence, *Jencks* material, identification of confidential informants, suppression of statements and tangible evidence, grand jury materials, Rule 12(b)(4) notice, disclosure of criminal records of witnesses, and notice of intent to seek a superseding indictment. (Docket # 39). Each of the motions was decided by the undersigned or resolved by the parties in open court on December 9, 2015. (Docket ## 41, 42).

[2] The transcript of the April 5, 2016 hearing shall be referred to as "Tr. __." (Docket # 49).

They discussed the defendant, whom the witness knew by the nickname "Bless," and other targets of the investigation. (Tr. 6, 20, 24). Uzarowski testified that the investigation had revealed that Jones was also known by the nickname "Steve-O," and that he raised this nickname in his interview with the witness. (Tr. 45, 48-49). The witness indicated that she knew Jones only as "Bless." (Tr. 49). During the course of the meeting, the witness described the person she knew as "Bless" as skinny and tall, approximately 5'9"-6'0", with big feet. (Tr. 26).

At the conclusion of the approximately one-hour meeting, the agents showed the witness a photographic array and asked the witness if she recognized anyone depicted. (Tr. 6, 7, 20; Government's Exhibit ("G. Ex.") 1). According to Uzarowski, the witness "immediately stated that No. 2 and No. 3 look like the man [she] remember[ed]." (Tr. 7). At Uzarowski's direction, she initialed the second and third photographs and wrote "#2 + #3 look like the man I reme[m]ber" on the bottom of the array. (Tr. 82; G. Ex. 1).

The array contained six black and white photographs of different African-American men, which were presented in two rows of three photographs each. (Tr. 18; G. Ex. 1). The top left corner of the array contained the following typewritten material:

> Label: STEVE-O
> Created By: MSO-3246
> Creation Date: 02/26/2014

(G. Ex. 1; *see* Tr. 40). Jones's photograph was the third in the array, in the position on the farthest right of the top row. (G. Ex. 1; Tr. 7). Uzarowski testified that he did not draw the witness's attention to the typewritten material. (Tr. 44). Indeed, Uzarowski credibly testified that he did not realize that the name "Steve-O" appeared on the array until he was examined about it at the hearing. (Tr. 40).

Uzarowski testified that neither he nor Harrington suggested which, if any, photographs the witness should select, nor did they make any promises or threats to her in connection with the identification procedure. (Tr. 9). The interview ended after the identification procedure. (*Id.*).

  B.  <u>**September 24, 2014 Identification Procedure**</u>

As part of Uzarowski's continued work on the Jones investigation, he and another Task Force officer, Brian Tucker, met with a witness on the afternoon of September 24, 2014 in a parked car in Greece, New York. (Tr. 10). Uzarowski testified that they had previously met with the witness, who was a minor, about one week earlier; he could not remember whether he told her at the first meeting that they would return with an array for her to view. (Tr. 10, 29, 32). In the earlier meeting, the witness described Jones as a tall black male and indicated that she knew him as "Bless" and had heard him referred to on one occasion as "Steve-O." (Tr. 52-53).

During the September 24 meeting with the witness, they began by discussing her interactions with Jones. (Tr. 10, 46). At the conclusion of the interview, Tucker handed her a six-photograph array and asked her if she recognized any of the individuals. (Tr. 12). According to Uzarowski, she responded by indicating that the individual depicted in the fourth photograph was the person she knew as "Bless." (Tr. 12, 33). At Tucker's instruction, the witness placed her initials and the date and time directly under the photograph she had identified. (*Id.*; G. Ex. 2).

The array that the witness was shown contained the same black and white photographs as were contained in the array shown to the witness on February 26, 2014, although they were in different positions. (*Compare* G. Ex. 2 *with* G. Ex. 1). Jones's photograph was in the fourth position, or the farthest left on the bottom row, in the array shown to the witness on

4

September 24, 2014. (Tr. 13). The array contained the same typewritten material as the array shown to the witness on February 26, 2014, including the line, "Label: STEVE-O." (G. Ex. 2). Uzarowski testified that neither he nor Tucker drew the witness's attention to the name "Steve-O," nor did the witness ask any questions about it. (Tr. 46).

      Uzarowski testified the agents made no threats or promises to the witness in connection with the identification procedure, nor suggested which photograph she should identify. (Tr. 13-14). The interview concluded after the identification procedure. (Tr. 14).

    C.    **October 3, 2014 Identification Procedure**

      On October 3, 2014, Uzarowski and Tucker met with a third witness and her attorney at the FBI's Rochester office. (Tr. 15). The witness was interviewed about her interactions with Jones, whom she knew as "Bless." (Tr. 15, 47). She did not provide a physical description of Jones. (Tr. 42). At the conclusion of the interview, she was shown a photographic array that was identical to the array shown to the witness on September 24, 2014. (Tr. 15-16; *compare* G. Ex. 3 *with* G. Ex. 2). Tucker asked her if she recognized any of the individuals depicted, and she responded that photograph No. 4 was the person she knew as "Bless." (Tr. 16). Neither of the agents, nor the witness or her attorney, mentioned the label "Steve-O" on the array. (Tr. 47-48). She placed her initials under the fourth photograph and dated the array. (Tr. 17, 37; G. Ex. 3).

      Neither Uzarowski nor Tucker threatened or made promises to the witness in connection with the procedure, or suggested to her which photograph to select. (Tr. 17). After the identification procedure was completed, the nearly one-hour interview concluded. (Tr. 17, 38).

**DISCUSSION**

Evidence of an out-of-court photographic identification will be suppressed under the due process clause if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In determining whether to exclude evidence of a pretrial identification, a court must first consider whether the identification procedure was unduly suggestive. *Id*. To decide whether a photographic array is unduly suggestive, a court should consider several factors, including "the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990), *cert. denied*, 501 U.S. 1233 (1991). Specifically, the court must consider "whether the picture of the accused . . . so stood out from all the other photographs as to suggest to an identifying witness that [the accused] was more likely to be the culprit." *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (internal citations omitted).

If the identification procedure was unduly suggestive, the court must proceed to determine whether the identification nevertheless possesses "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-17 (1977)), *cert. denied*, 434 U.S. 872 (1977). "Even if the procedure was unnecessarily (or impermissibly) suggestive . . .[,] a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

On the basis of the credible testimony offered by Uzarowski, I find that neither the instructions given to the three witnesses, nor the photographs contained in the array itself, were unduly suggestive. In each meeting, the Task Force officers directed the witness to view the array and indicate whether she recognized the individual depicted. No other verbal directions or suggestions were given until the witness responded with her identification. Only then was the witness directed to initial the array. Nothing about the agents' verbal interactions with each of the witnesses was unduly suggestive. *See United States v. Williams*, 2015 WL 429087, *17 (W.D.N.Y.) (manner of presentation of array not unduly suggestive where it did not suggest to the witness which, if any, photograph to select); *report and recommendation adopted*, 2015 WL 3454430 (W.D.N.Y. 2015); *United States v. Guzman*, 2015 WL 774211, *7 (W.D.N.Y. 2015) (same).

Nor is there anything about the six photographs themselves that was unduly suggestive. The array each witness viewed contains six black and white photographs of different African-American men of apparently similar ages. (G. Exs. 1, 2, 3). All are head shots and feature men with short hair, five of whom have closely groomed facial hair. Jones's complexion appears somewhat lighter than the others', although it is difficult to tell whether that difference is a result of the lighting in the photograph. All of the background hues are shades of light to dark grey. The photographs do not reveal comparative heights or weights of the individuals depicted, although Jones's face and the face of one other appear slightly thinner than the others. In any event, the differences that this Court perceives are so minor that they could not "suggest to an identifying witness that [the defendant] was more likely the culprit." *Jarrett v. Headley*, 802 F.2d at 41; *see United States v. Bubar*, 567 F.2d at 198-99 (array not unduly suggestive although defendant's hair was long and darker and his moustache was darker and bushier than filler

photographs); *see also United States v. Gay*, 423 F. App'x 873, 877 (11th Cir. 2011) (array not unduly suggestive despite defendant's contention that his "background and his complexion are significantly darker than the other pictures in the photo array[;] . . . [t]he district court's finding that these differences were insignificant, and did not affect the suggestiveness of the procedure, was not clearly erroneous"); *United States v. Knight*, 382 F. App'x 905, 907 (11th Cir. 2010) ("[a]lthough [defendant] was of a lighter complexion than four of the other individuals in the array and the background lighting in his photograph was slightly different from some of the other photographs, neither of those differences [was] stark enough so as to be unduly suggestive"); *United States v. Wrensford*, 2014 WL 1218398, *4 (D.V.I. 2014) ("[m]inor differences such as fullness of face, size of head, or complexion, are not indicia of suggestiveness, much less undue suggestiveness that implicates constitutional violations in the identification process") (collecting cases); *Robinson v. Artus*, 664 F. Supp. 2d 247, 259 (W.D.N.Y. 2009) ("differences in complexion tones between subjects in an identification procedure, standing alone, does not create an unduly suggestive procedure").

Despite the absence of suggestiveness in the directions given to each witness and in the photographs themselves, the question remains whether the inclusion in the upper left hand corner of the array of the typewritten statement "Label: STEVE-O" renders the procedure unduly suggestive. "Steve-O" was one of the nicknames allegedly used by Jones, and Uzarowski testified that he raised that nickname with each witness. Although two of the witnesses evidently knew Jones by another nickname and not as "Steve-O," the witness in the September 24 procedure stated she had heard him referred to on one occasion as Steve-O. Uzarowski credibly testified that he had not noticed the nickname on the array until the evidentiary hearing and had not pointed out or drawn attention to the label with any of the witnesses. He also testified that

8

each of the witnesses making her identification used the name "Bless," not "Steve-O." In addition, it is notable that the location of the nickname was not physically associated with any photograph in particular, and Jones's photograph was not the one closest to the "label."

Certainly, the inclusion of a suspect's nickname on the array itself is disfavored and should be abandoned by the officer responsible for compiling the array. *See Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007). That said, I find under the totality of the circumstances of this case discussed above that the inclusion of a nickname other than the one by which the witnesses generally knew the defendant, in a position in the array not physically associated with the defendant's photograph, did not render the otherwise proper procedure unduly suggestive. *See Jenkins v. City of New York*, 478 F.3d at 93 ("[t]his Court . . . has held that although the police generally should refrain from informing a witness that the suspect is in the lineup, a lineup is not unduly suggestive merely because they do"); *Sales v. Harris*, 675 F.2d 532, 538 (2d Cir.) ("[a]s to the lineup, the only hint of suggestiveness emanated from the police officer's statement to [the witness] just prior to viewing the lineup that a suspect was in custody[;] [a]lthough this [C]ourt has expressed disapproval of such a statement, . . . the suggestiveness in this case was minimal since the statement preceded an otherwise acceptable lineup"), *cert. denied*, 459 U.S. 876 (1982); *United States v. Gambrill*, 449 F.2d 1148, 1151 n.3 (D.C. Cir. 1971) ("[i]t must be recognized . . . that any witness to a crime who is called upon to view a police lineup must realize that he would not be asked to view the lineup if there were not some person there whom the authorities suspect"). *Cf. Floyd v. Conway*, 2010 WL 3420630, *7 (W.D.N.Y. 2010) ("[e]ven if [the officer] were to have advised the witness that a photograph of the suspect was included in the array, this would nonetheless not have been fatal to the propriety of the procedure") (internal quotation omitted).

## **CONCLUSION**

For the reasons stated above, I recommend that the district court deny Jones's motion to suppress evidence of photographic identifications. (Docket # 39).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August 1, 2016

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[3]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
        August 1, 2016

---

[3] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).